[Civ. No. 6489. Fourth Dist. Sept. 19, 1961.]

MARY LOUISE KING SMITH, Appellant, v. KAY VINCIN SMITH, Respondent.

Edwin C. Jefferies for Appellant.

Augustine & Bryans, C. H. Augustine and George E. Bryans for Respondent.

COUGHLIN, J.—This is an appeal from a judgment in an action for divorce. The controversy respects a division of the community property. The issues on appeal concern the sufficiency of the evidence to sustain a finding of the value of a community asset, alleged prejudice of the trial judge, and claimed error in an order denying the plaintiff's motion for a new trial. The plaintiff in the action, who is the appellant herein, was the wife of the defendant, who is the respondent herein. Under appropriate pleadings, the court entered judgment granting a divorce to both parties; dividing the community property equally between them; and awarding the plaintiff alimony for two years.

During the marriage, the defendant husband was the San Diego County general agent of a life insurance company. Prior to marriage, the plaintiff had been a licensed insurance saleswoman actively engaged as such for the same company. The contract between the defendant and his company, which bears date of June 1, 1949, provided for the payment to him of a commission upon the issuance of a policy of insurance through his agency and upon the annual renewal thereof to and including the 10th year; fixed the commissions so payable at different rates for the first year, second year, and third to tenth years; required the company to pay the defendant's general office expenses; and was terminable by either party upon 30 days' notice. The contract contained the following provision: "No assignment or transfer of rights or interests under this contract shall be valid as against the Company unless authorized in advance in writing by the Company."

The plaintiff and defendant were married on April 25, 1952,

and separated on April 29, 1959. The trial of the action took place on January 26, 1960. The findings of fact set forth a description and the value of the community property, among which was an item described as ''renewals on insurance commissions,'' which the court found to be of the value of $30,000. The judgment ordered an equal division of community assets remaining after payment of designated community debts; to effect such division awarded the plaintiff certain specific items of property, which did not include the right to commissions on renewed policies; awarded all of the remaining property to the defendant, including the right to renewal commissions; ordered the defendant to pay the plaintiff the sum of $8,434 as the balance of her one-half share of the community assets; and placed a lien on the renewal commissions to secure payment of the aforesaid amount.

 The plaintiff claims that the contract right to receive commissions upon the renewal of policies theretofore issued through the defendant's agency was worth more than $30,000 at the time of trial. This claim is based on the conclusion, which the plaintiff contends is supported by uncontradicted evidence, that in the nine years following trial the defendant would receive $90,000 in renewal commissions upon policies theretofore issued by his agency. As a premise for this conclusion, the plaintiff relies upon the testimony of the defendant that in 1958 his renewal commissions amounted to $9,895. The defendant had been general agent since 1949 and the falsity in the conclusion that he would receive nine times the amount of his renewal commissions in 1958 for policies of insurance theretofore issued through his agency, is obvious, for it is based on the assumption that all of the renewal commissions received in 1958 were for policies issued during the previous year and would continue to be renewed for nine years. As a matter of fact, even though the policy renewals in 1958 had been issued originally in 1957, the right to renewal commissions would cease eight years after 1958. Moreover, the general agency contract provides a different commission rate for second-year renewals than for third to tenth-year renewals. The evidence did not contain a breakdown respecting the original issuance date of any of the policies upon which renewal commissions were paid in 1958. As a consequence, what part of the 1958 renewal commissions is attributable to the higher second year rate, which will not be repeated, is unascertainable and deprives the 1958 figure upon which the plaintiff relies of the significance which she attaches to it. In addition,

the lack of any breakdown respecting the date of issuance of the policies upon which renewal commissions are based leaves unanswerable any inquiry as to the number of policies issued prior to marriage. The plaintiff's argument also assumes that all of the policy holders who obtained insurance through the defendant's agency are going to continue to renew their policies for nine years. The evidence supports the conclusion that this is not the fact.

The agency contract contains many provisions which affect the amount and the right to renewal commissions, including those prescribing annual volume of business requirements, and different rates of payment depending upon the manner of termination of the contract, i.e., (1) death, (2) misconduct of the agent, or (3) other causes. The contract provisions are an additional feature adding to the uncertainty attendant upon a determination respecting the probable amount which might be derived from renewal commissions in the future.

The finding of the trial court as to the value of the right to renewal commissions properly was based on its market value, and there is adequate evidence to support its conclusion in the premises. The written opinion of an inheritance tax appraiser, by stipulation, was admitted in evidence; established that the market value in question was $30,000; and indicated that such a value was based upon a generally accepted formula which multiplied the amount of current annual renewal commissions by three. The written balance sheet of the defendant's accountant was placed in evidence by the plaintiff; lists the market value of insurance renewals, as of May 11, 1959, at $29,685.21; and thus corroborates the inheritance tax appraiser's opinion. A report by the plaintiff's accountant, which also was admitted in evidence, states that a fair formula for determining the value of the renewal commissions in this case would be to take 300 per cent of the amount of the 1958 renewals. This is the same formula applied by the inheritance tax appraiser. However, the plaintiff's accountant erroneously based his computation on all of the commissions received by the defendant in 1958 which included first-year commissions as well as renewals. The rate for first-year commissions, as prescribed by the agency contract, is several times greater than that for renewal commissions. On this basis the trial court properly rejected the opinion of the plaintiff's accountant. The attorney for the plaintiff developed pertinent testimony corroborating the inheritance tax appraiser's method of computation when he asked the defendant:

"Well, in view of lapses and other things, and I think that counsel will stipulate to this, it is usually the value of the renewal commissions for one year, multiplied by three, in order to give the value of the entire renewal commissions, is that not true?"

And received the reply: "This is a general formula that is used."

It is a fundamental and time-honored rule that when the sufficiency of the evidence to sustain a finding of fact is contested on appeal, it will be assumed that the trial court resolved every factual conflict in favor of the prevailing party and that if there is any substantial evidence, direct or indirect, contradicted or uncontradicted, in support of the finding it will be sustained. (*Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231]; *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

There is substantial evidence in the record before us, as heretofore noted, which supports the finding of the trial court as to the value of the right to renewal commissions on policies issued through the defendant's agency during marriage. The contention of the plaintiff to the contrary is without merit.

The plaintiff's contention that the trial judge was prejudiced against her, and for this reason the judgment should be reversed, is without factual foundation. We have examined the statements of the trial judge upon which the plaintiff relies to establish her claim of prejudice and, in the light of the record, find no evidence of prejudice therein. For this reason no further consideration need be given thereto.

The contention that the plaintiff's motion for a new trial should have been granted, likewise, is without merit. Upon appeal the ground upon which the plaintiff relies in support of her motion, is newly discovered evidence with respect to the husband's income for the year 1959. At the trial, in response to questions from the plaintiff's attorney, the defendant testified that the gross receipts from his business in 1959 were at least as much as the year before, and he would assume them to be "a little higher." No further introduction of evidence on this subject occurred, and no effort was made to cause the defendant's 1959 records to be produced. The plaintiff claims that after the trial she discovered that the defendant's gross income for 1959 was $52,230 and that his renewal commissions for that year were $12,776.43; that this evidence would support a higher value upon the right to

future renewal commissions; and, therefore, the court should have granted her motion in order to permit its introduction. The record on appeal does not indicate that an affidavit to this effect was filed in support of the motion for a new trial. Furthermore, the facts set forth in her brief and upon which she relies are insufficient to warrant the granting of her motion. It does not appear why the existence of the allegedly newly discovered evidence was not ascertained until after the cause had been submitted for decision. ▮ It is well settled that a motion for a new trial on the ground of newly discovered evidence will not be granted for the purpose of allowing a party to introduce evidence which, by the exercise of reasonable diligence, could have been presented at the time of trial. (*Rubin* v. *De Lao*, 110 Cal.App.2d 345, 348 [242 P.2d 360]; *Baran* v. *Goldberg*, 86 Cal.App.2d 506, 513 [194 P.2d 765]; *Langdon* v. *Langdon*, 47 Cal.App.2d 28, 33 [117 P.2d 371]; *Miles* v. *A. Arena & Co.*, 23 Cal.App.2d 680, 685 [73 P.2d 1260].) ▮ Whether the moving party made a reasonable effort to discover such evidence and present it at the time of trial is a question addressed to the sound legal discretion of the trial court, and in the absence of an abuse of that discretion, its determination in the premises will not be interfered with on appeal. (*Adams* v. *Schmoker*, 54 Cal.App.2d 719, 723 [129 P.2d 961]; *Bennington* v. *National Packing Co.*, 122 Cal.App. 313, 317 [9 P.2d 857]; *Baule* v. *Drobatz*, 6 Cal. App. 594, 596 [92 P. 666].) ▮ In the case at bar, it is evident that the plaintiff had access to the defendant's records through a subpoena duces tecum; had knowledge of the fact that the amount of the defendant's business for 1959 was higher than his business in 1958, because he so testified; but did not choose to further develop the evidence on this issue. Under these circumstances, the decision of the trial court denying her motion for a new trial was not error.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.